# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SCOTT G. LUTHI,              ) | |
|                     ) | |
|        Plaintiff,      ) | |
|                     ) | **CIVIL ACTION** |
| v.                    ) | |
|                     ) | **No. 10-2164-JWL** |
|                     ) | |
| MICHAEL J. ASTRUE,    ) | |
| Commissioner of Social Security,   ) | |
|                     ) | |
|        Defendant.    ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the administrative law judge's (ALJ's) decision, the court ORDERS that judgment shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision.

## I.      Background

Plaintiff applied for DIB on April 29, 2004 alleging disability since April 26, 2004. (R. 54-57). The application was denied, and Plaintiff exhausted his remedies before the Social Security Administration (SSA) and filed a complaint in this court on April 25,

2007 alleging error in the Commissioner's final decision issued August 2, 2006. (R. 13-24, 314-17); see also Luthi v. Astrue Case No. 07-2167-JWL (Doc. 1). In due course, Magistrate Judge John T. Reid issued a Report and Recommendation finding error in the Commissioner's credibility determination, and recommending remand in accordance with the fourth sentence of 42 U.S.C. § 405(g) for the Commissioner to re-evaluate the credibility determination and to consider whether Plaintiff's psychological impairments might combine with his physical impairments. (R. 314-32). Neither party objected to the Report and Recommendation, and this court adopted it and remanded the case for further proceedings. (R. 313). On remand, the Appeals Council vacated the August 2, 2006 decision, and remanded the case to an ALJ "for further proceedings consistent with the order of the court," to include completing the administrative record, offering Plaintiff the opportunity for another hearing, and issuing a new decision. (R. 335).

On remand, ALJ Jack D. McCarthy received additional evidence and on February 12, 2009 held another hearing. (R. 336-539). Plaintiff appeared with counsel at the hearing, and testimony was taken from Plaintiff and from a vocational expert. (R.500-39). On November 25, 2009 ALJ McCarthy issued a "decision on remand" in which he found that Plaintiff is unable to perform his past relevant work, but that there are a significant number of jobs in the economy which Plaintiff can perform. (R. 300-11). Therefore, he found Plaintiff not disabled within the meaning of the Act, and denied his application for benefits. (R. 310-11).

Plaintiff did not file exceptions to the November, 2009 decision on remand and the

Appeals Council did not otherwise assume jurisdiction over it, leaving that decision as the

final decision of the Commissioner.  Lax v. Astrue, 489 F.3d 1080, 1082 (10th Cir. 2007)

(citing 20 C.F.R. § 404.984 and Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir.

2004)).  Plaintiff timely filed a Complaint in this court on March 24, 2010 seeking

judicial review of the decision on remand.  (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act.  Wall v. Astrue, 561

F.3d 1048, 1051-52 (10th Cir. 2009) (citing 42 U.S.C. § 405(g)).  Section 405(g) of the

Act provides that, "The findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive."  The court must determine whether the factual

findings are supported by substantial evidence in the record and whether the ALJ applied

the correct legal standard.  Lax, 489 F.3d at 1084; accord, White v. Barnhart, 287 F.3d

903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than

a preponderance; it is such evidence as a reasonable mind might accept to support a

conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir.

1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that

of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether

substantial evidence supports the Commissioner's decision, however, is not simply a

3

quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520 (2008); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe

impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at step four and five of the sequential process. Id.

After assessing claimant's residual functional capacity (RFC), the Commissioner evaluates steps four and five--whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (citing Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show jobs in the economy within Plaintiff's capability. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in evaluating the credibility of his allegations of symptoms and in evaluating the opinion of his treating psychologist, Dr. Grossman, and also failed to consider the combined effects of his impairments. He claims it was error to rely upon vocational expert testimony which was based upon these erroneous findings, and that the proper remedy is remand for immediate award of benefits. The Commissioner argues that the ALJ considered the combined effects of Plaintiff's

impairments, and that substantial record evidence supports both the ALJ's credibility

determination and his evaluation of the opinion evidence.  The court agrees with the

Commissioner for the reasons discussed herein.

**III.    Analysis of the ALJ's Credibility Determination**

The Tenth Circuit has explained the analysis for considering subjective testimony

regarding symptoms.

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain.  This court
> has stated:  The framework for the proper analysis of Claimant's evidence
> of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We
> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (dealing specifically with pain).

In evaluating symptoms, the court has recognized a non-exhaustive list of factors

which should be considered.  Luna, 834 F.2d at 165-66.  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the consistency
> or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (citing Thompson, 987 F.2d at 1489.

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility which overlap and expand upon the factors suggested by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii).

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Hackett, 395 F.3d at 1173 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)).

Plaintiff first argues that the ALJ applied the incorrect legal standard for evaluating credibility in that he merely disregarded Plaintiff's subjective complaints because the complaints go beyond the objective medical evidence, and that he failed to follow the court's remand order and consider whether Plaintiff's physical and psychological

impairments might combine to produce disabling pain. (Pl. Br. 24-25). The court does not read the ALJ's decision so narrowly.

At the beginning of his RFC assessment, the ALJ cited the regulations and rulings applicable to credibility determination and to evaluation of medical opinions, and then summarized the standard for credibility determination promulgated therein:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

(R. 304). Although the ALJ characterized the applicable standard as a "two-step process," that process is for all intents and purposes identical to the three-part framework presented in Luna and its progeny: Has Plaintiff shown (1) an impairment(s) (2) which could reasonably produce the alleged symptoms (whether there is a "loose nexus" between the impairment(s) and the symptoms); and (3) if so, the ALJ must consider the credibility of Plaintiff's allegations in light of all of the record evidence. The ALJ articulated the correct legal standard. The question remains whether he applied it.

In four paragraphs at the end of his RFC assessment, the ALJ evaluated the

credibility of Plaintiff's allegations of symptoms, and stated ten reasons he found them

"not credible:"

> The undersigned next evaluates the claimant's credibility. While the claimant does have "severe" impairments with limitations, the evidence as a whole does not support his assertion of disability. In fact, [(1)] the objective record contradicts many of the claimant's statements. For example, the exam in April 2007 revealed a normal gait, tone and strength and full and painless range of motion of all major muscle groups and joints. It is noted that the claimant reported a worsening of his RSD [(reflex sympathetic dystrophy)] during that visit. Yet, treatment records reveal that that [sic] claimant began riding his bike and his treating physician began tapering him from medications. The undersigned finds a loose nexus between his impairments and a part of his pain complaints.
>
> [(2)] His mental impairments also improved with medication. In fact, the claimant requested to decrease his medications. During a current psychological evaluation, the claimant did not demonstrate symptoms of depression. These facts indicate a lessening of the combined effects of his mental and physical impairments on his ability to work. [(3)] There have been no complaints of ongoing severe pain or inability to function. Therefore, it is unlikely that claimant converted psychological distress into somatic complaints. [(4)] The undersigned also noted that the claimant moved easily as he entered and exited the hearing room. Additionally, [(5)] the claimant has made inconsistent statements which detract from his credibility. [(6)] He reported feeling better since starting individual therapy with Dr. Grossman in early 2007. Yet, [(7)] Dr. Schemmel noted the possibility of malingering or exaggeration of both psychological and cognitive problems. [(8)] While the claimant alleged memory problems, he was able to clearly state when he last had a seizure and the exact date of his motor vehicle accident in 2002.
>
> Despite his complaints [(9)] the claimant has been able to engage in a variety of daily activities including bike riding, mowing the lawn, driving, woodcarving, running errands and cooking although with reported limitations. The claimant had a consistent work record prior to his alleged onset date. It is noted that as his condition improved, [(10)] he began

looking for work and had even obtained a part-time job. This indicates that he even felt capable of working during the time he alleged disability.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. 308-09) (numbering added by the court for clarity of discussion).

This analysis reveals that the ALJ found impairments which could produce the symptoms alleged, that there is a loose nexus between the impairments and the symptoms, and that the ALJ evaluated all of the record evidence. The court cannot discern a basis for Plaintiff's argument that his complaints were disregarded merely because they go beyond the objective medical evidence. The ALJ gave ten reasons for finding Plaintiff's allegations "not credible," and the decision reveals he considered all of the record evidence in doing so. Moreover, Plaintiff's allegation that the ALJ failed to follow the court's prior remand order is contradicted by the ALJ's consideration of reasons 2, 3, 8, and 10, and his conclusion that there was a "lessening of the combined effects of [Plaintiff's] mental and physical impairments on his ability to work."

Much of the remainder of Plaintiff's credibility argument is simply an appeal to evidence in the record which might support a finding that Plaintiff's allegations of disabling symptoms are credible. However, Plaintiff must affirmatively demonstrate error in the ALJ's rationale or finding, the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The

possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and brackets omitted); see also, Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989) (quoting Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966)). Nevertheless, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston, 838 F.2d at 1133. Therefore, where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

Plaintiff argues that the ALJ "failed to consider that it appeared Luthi's symptoms appeared to be relapsing and remitting throughout the year. Luthi testified and reported to doctors that his pain was worse in the cold weather." (Pl. Br. 26) (citing (R. 486, 520)). Contrary to Plaintiff's argument, the ALJ specifically considered Plaintiff's report that his pain was worse in cold weather. The ALJ noted that Plaintiff reported at a consultative neurological examination performed on November 3, 2008 that "his pain was relatively well controlled although it was worse during the winter and cold temperature." (R. 306). He then stated a counterpoint: "The undersigned again notes that the exam was performed in November." Id. This statement and counterpoint implies that the ALJ

recognized the inconsistency between Plaintiff's statements (in November) that his pain

was currently relatively well controlled but also that the pain gets worse in the winter.

Further, the ALJ summarized the evidence, recognized that Plaintiff's symptoms

waxed and waned at times, and explained why he determined from the evidence that the

symptoms were not disabling and had, in fact, improved over time.  (R. 305-07).  The

ALJ considered Plaintiff's allegations of relapsing-remitting symptoms but rejected them,

and substantial record evidence supports the ALJ's credibility finding.  As discussed

above, the fact that the evidence might also support a contrary finding is of no

consequence.  E.g., Lax, 489 F.3d at 1084.  Moreover, Plaintiff's testimony and reports to

physicians provide little support for the credibility of his allegations of disabling

symptoms since the ALJ has given ten reasons based upon record evidence to discount

the credibility of that very testimony and of Plaintiff's reports.

In his final credibility argument, Plaintiff correctly states the principle that "[t]he

sporadic performance of household tasks or work does not establish that a person is

capable of engaging in substantial gainful activity," and he implies that reason number (9)

for discounting the credibility of his allegations (claimant has been able to engage in a

variety of daily activities) is erroneous.  (Pl. Br. 27) (citing Thompson, 987 F.2d at 1490).

As Plaintiff asserts, the Tenth Circuit has long held that the sporadic performance of

minimal activities does not establish that a claimant is able to work.  E.g., Broadbent v.

Harris, 698 F.2d 407, 413 (10th Cir. 1983) (working in the yard, performing a few

household tasks, working on cars, taking occasional trips with brother in camper); Byron

v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984) (jogging and intermittent work as a janitor); Frey v. Bowen, 816 F.2d 508, 516-17 (10th Cir. 1987) (daily activities); Thompson, 987 F.2d at 1490 (minimal daily activities).  Therefore, when an ALJ seeks to rely upon daily activities to discount the credibility of a claimant's allegations it will be necessary for him to explain which activities are inconsistent with which allegations.

Here the ALJ found that Plaintiff is able to engage in a variety of daily activities including bike riding, mowing the lawn, driving, woodcarving, running errands and cooking, although with reported limitations; and that he had even obtained a part-time job. (R. 308-09).  It is by no means clear that the activities relied upon are merely the sporadic performance of minimal activities as suggested by Plaintiff.  Nonetheless, the ALJ did not explain how the activities are inconsistent with Plaintiff's allegations of symptoms.  In the circumstances of this case the court does not find that this error, if any, requires remand, because as demonstrated above "the balance of the ALJ's credibility analysis is supported by substantial evidence in the record."  Branum v. Barnhart, 385 F.3d 1268, 1274 (10th Cir. 2004).  The ALJ's credibility determination provided a reasoned rationale to find Plaintiff's allegations not credible, and that rationale is supported by substantial evidence in the record as a whole.

## IV.    Evaluation of the Treating Psychologist's Opinion

In a single paragraph, Plaintiff argues that the ALJ gave inadequate weight to Dr. Grossman's opinion that Plaintiff had a poor ability to deal with work stress and to function independently.  (Pl. Br. 28).  This is so, in Plaintiff's view because the opinion is

supported by Dr. Grossman's own treatment notes which indicate Plaintiff "exhibited a hysterical response to his pain," and by Dr. Bratt's psychological evaluation which indicates Plaintiff "was focused on his medical problems and exhibited symptoms associated with somatoform disorder." (Pl. Br. 28) (citing (R. 152-59, 385)). The Commissioner argues that substantial evidence supports the ALJ's evaluation of Dr. Grossman's opinion. (Comm'r Br. 13-14).

As Plaintiff argues, a treating source opinion deserves substantial weight unless good cause is shown to disregard it. Drapeau v. Massarni, 255 F.3d 1211, 1213 (10th Cir. 2001); Bean v. Chater, 77 F.3d 1210, 1214 (10th Cir. 1995); Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987). When an ALJ rejects such an opinion, he must "give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

Here, the ALJ noted that Dr. Grossman treated Plaintiff about every two weeks beginning in early 2007 through the date of the hearing in February 2009, and that he completed a Mental Medical Source Statement in which he opined that Plaintiff "had a fair to good ability to engage in most work-related mental activities [but that he] had poor ability to deal with work stress and to function independently." (R. 304, 307, 308). The ALJ gave "little weight" to Dr. Grossman's opinion regarding poor ability to deal with work stress and to function independently because (1) objective evidence developed during a recent psychological evaluation "revealed that claimant's credibility was in question," because (2) the opinion was "not well-supported by medically acceptable

14

clinical and laboratory diagnostic techniques" and because (3) the opinion is "inconsistent with other substantial records which indicate that the claimant's mental condition has improved."  (R. 308).

The reasons given by the ALJ to discount Dr. Grossman's opinion are supported by substantial evidence in the record, and Plaintiff does not deny them.  Rather, he argues that other evidence (Dr. Grossman's treatment notes which indicate Plaintiff exhibited a hysterical response to pain, and Dr. Bratt's findings which indicate that Plaintiff was focused on his medical problems and exhibited symptoms associated with somatoform disorder) requires that additional weight be accorded to Dr. Grossman's opinion.

Plaintiff's appeal to Dr. Grossman's treatment notes provides little support for his argument.  The single note to which Plaintiff cites does not necessarily indicate Plaintiff "exhibited a hysterical response to his pain" as Plaintiff's brief suggests.  (Pl. Br. 28) (citing (R. 385)).  That note contains a section titled "Recommendations," in which the doctor has written "prevent hysterical response to pain."  (R. 385).  While the note contains the psychologist's recommendation that Plaintiff prevent a hysterical response to pain, and might be interpreted to indicate that Plaintiff had previously, or even habitually, exhibited such a response; it does not require such a conclusion.  It might just as readily be interpreted as the psychologist's caution to Plaintiff that circumstances might come about which suggest such a response to an individual with RSD, but that Plaintiff should be aware of that possibility and should not accede to the suggestion.  Moreover, the cited note is the latest treatment note in Dr. Grossman's records, and a review of the earlier

notes does not reveal any indication, or even a suggestion, that Plaintiff has exhibited a hysterical response to pain. (R. 386-96). This fact makes it more likely that the treatment note at issue should be interpreted as a cautionary warning rather than a reminder to provide a different response in the future. The court need not definitively decide the issue because the ALJ did not discuss this particular note, and there is nothing in the record to suggest that it was either uncontroverted or significantly probative and thus requiring discussion in the decision. Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (ALJ must considered all of the evidence, but need discuss only the evidence supporting his decision, the uncontroverted evidence he chooses not to rely upon, and significantly probative evidence he rejects).

Dr. Bratt's report provides no greater support for Plaintiff's argument. In November of 2004, Dr. Bratt performed a psychological evaluation of Plaintiff and provided a report of that evaluation to the Commissioner. (R. 152-62). As a part of that evaluation, Dr. Bratt performed a clinical interview and administered an intelligence test and a memory test. (R. 152). Dr. Bratt concluded the narrative summary in his report by stating: "Results of this evaluation are inconclusive. However, based upon the information obtained during this evaluation, Scott should be able to work and handle his own finances." (R. 158).

Plaintiff notes that Dr. Bratt found Plaintiff "was focused on his medical problems and exhibited symptoms associated with somatoform disorder," and asserts that these findings support Dr. Grossman's opinion that Plaintiff had poor ability to deal with work

stress and to function independently.  (Pl. Br. 28).  Plaintiff does not explain how a focus

on medical problems or symptoms of somatoform disorder relate to work stress or

independent functioning, and the court does not see a connection except in the most

general sense.

More importantly, Plaintiff's argument takes portions of Dr. Bratt's psychological

evaluation out of context.  In his discussion of Plaintiff's psychological history, Dr. Bratt

noted that Plaintiff denied "most symptoms associated with the Major Mood, Anxiety,

Schizophrenic, or Other Psychotic Disorders," focuses on his pain and medical problems,

may be converting psychological distress into somatic complaints, "appears to have

limited skills in dealing with emotional stress, lacks insight into his psychological

functioning, and may be suffering from a Somatoform Disorder."  (R. 154).  Dr. Bratt

then concluded the "Psychological History" section of his report by stating, "The

possibility of malingering should also be considered."  Id.  In discussing the results of

psychological testing, Dr. Bratt observed that although Plaintiff seemed to cooperate in

answering all questions during the clinical interview, his effort during testing "appeared

marginal; he tended to give up easily, [to] answer questions impulsively or without

effortful thought, and [to] respond immediately with 'I don't know.'" (R. 152).  Dr. Bratt

explained the test results:

> As reported in the Observation section, Scott's test-taking behaviors were
> somewhat suspect; he answered many questions in a rather quick and
> impulsive manner, and frequently appeared to give up easily.  It is quite
> possible that Scott's affect, motivation, and/or attitude towards this testing

17

affected his performance. Caution in the interpretation of these results is therefore warranted.

(R. 154).

Based upon Dr. Bratt's explanations; his concern about the possibility of malingering; his concern regarding Plaintiff's affect, motivation, or attitude toward testing; his expression of caution in relying on the test results; and his statement that the results of his evaluation are inconclusive but that he found Plaintiff is able to work; there is little support indeed for Plaintiff's argument or for Dr. Grossman's opinion in Dr. Bratt's report. Moreover, the ALJ specifically discussed Dr. Bratt's report (Ex. 7) in his first decision, and adopted that discussion by reference in the decision on remand. (R. 305). In that discussion, the ALJ noted Dr. Bratt's concern over Plaintiff's test-taking behaviors, noted the test results were of questionable validity, recognized Dr. Bratt's determination that Plaintiff focused on his pain and medical problems, and also recognized Dr. Bratt's provisional diagnoses of malingering, and of pain disorder with both psychological factors and a general medical condition. (R. 21). He specifically noted that "[a]lthough Dr. Bratt determined his evaluation to be inconclusive, he opined the claimant was able to work." Id.

In the circumstances presented here, Plaintiff has not demonstrated that either Dr. Grossman's treatment note or Dr. Bratt's psychological evaluation actually support Dr. Grossman's opinion that Plaintiff has poor ability to deal with work stress and to function independently. More than that, there is simply no basis in the record to find that Dr.

18

Grossman's treatment note or Dr. Bratt's psychological evaluation <u>require</u> that the ALJ accord more than "little weight" to Dr. Grossman's opinion. The ALJ explained the weight he accorded Dr. Grossman's opinion and provided specific, legitimate reasons to discount that opinion. Those reasons are supported by substantial evidence in the record, and Plaintiff has not provided an argument which compels the provision of more weight to the opinion. The court finds no error in the ALJ's evaluation of the opinion.

**V.      Combined Effects of All Impairments**

Plaintiff next claims the ALJ failed to consider the combined effect of all of Plaintiff's impairments including (1) side effects from medications, (2) headaches caused by eye pain and double vision, and (3) moderately severe restrictions revealed in spirometry testing. (Pl. Br. 28-30). The Commissioner argues that the ALJ properly considered all of the evidence and the combined effects of Plaintiff's impairments. (Comm'r Br. 10).

With the exception of the side effects from medication, the ALJ in fact considered the impairments noted by Plaintiff. The record reveals the ALJ summarized "a Spirometry Report [dated] October 23, 2006" which "indicated a moderately severe restriction," (R. 305), he noted that Plaintiff "has headaches and right eye vision problems," (R. 304), and he recognized Plaintiff's report that "he occasionally had double vision in the distance and may have recently been placed with prisms, without clear benefit." (R. 306).

As to the alleged side effects from medication, Plaintiff's brief states that he "testified that side effects from his medication cause headaches, drowsiness, forgetfulness, and make him feel spacey." (Pl. Br. 29) (citing (R. 270, 517)). As Plaintiff cites, his attorney specifically questioned him regarding side effects from medication at the February 2009 hearing:

> Q    Okay. Now you talked about some medications that Dr. Simon prescribed. Do you experience any side effects from the medications?
>
> A    Lyrica, increased weight gain, and made me tired and I want to sleep.

(R. 517). Counsel reminded Plaintiff that he was no longer taking Lyrica, and no further mention was made of any side effects from medication. Id. Therefore, the second hearing testimony suggests no side effects from current medications.

Plaintiff's brief also cites to Plaintiff's testimony in the first hearing in June of 2006 where he testified that he gets headaches from Zonegran a "lot of times" and that he also gets drowsy and forgetful from Lyrica, and it makes him feel spacey. (R. 270). However, Plaintiff provides no reason for the ALJ to consider side effects mentioned in the first hearing more than two years earlier when there was specific testimony in the second hearing regarding side effects from medication, counsel noted that the medication was no longer taken, and neither Plaintiff nor counsel suggested that side effects from other medications mentioned in the earlier hearing were still present. The ALJ's error, if any, in failing to recognize additional side effects suggested in the earlier hearing was

invited by Plaintiff and the invited error doctrine would preclude a remand on that basis. St. Anthony Hosp. v. Dep't of Health and Human Servs., 309 F.3d 680, 696 (10th Cir. 2002); Tracy v. Astrue, 518 F. Supp. 2d 1291, 1305-06 (D. Kan. 2007).

The court finds no error in the ALJ's consideration of Plaintiff's impairments in combination. He considered and discussed all of the impairments in turn, including the credibility of Plaintiff's allegations of symptoms and the weight assigned the medical opinions (R. 304-09), and he stated that he made his RFC assessment "[a]fter careful consideration of the entire record." (R. 304). The court concludes from this statement that the ALJ considered all of Plaintiff's impairments in combination in reaching his result. Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1500 (10th Cir. 1992) (citing Renner v. Heckler, 786 F.2d 1421, 1424 (9th Cir. 1986)).

Plaintiff's final allegation of error--that the ALJ erred in relying upon the vocational expert testimony--is premised upon the errors alleged above. However, the court found no error as alleged by Plaintiff. A hypothetical presented to a vocational expert must include all limitations found by the ALJ, but need not include all limitations alleged by plaintiff. Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000). The ALJ need only include limitations which he finds supported by substantial evidence in the record. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993); Davis v. Apfel, 40 F. Supp. 2d 1261, 1269 (D. Kan. 1999). Here, the hypothetical presented to the vocational expert reflected the RFC limitations found by the ALJ and, therefore, the ALJ properly relied

upon the expert's responsive testimony in deciding the case.  Plaintiff has shown no error in the decision of the Commissioner.

**IT IS THEREFORE ORDERED** that judgment shall be entered in accordance with 42 U.S.C. § 405(g) AFFIRMING the decision of the Commissioner.

Dated this 31st  day of May, 2011, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**